UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**QUINCY DEMOND WILSON**                                   **CIVIL ACTION**

**VERSUS**                                                 **NO. 15-5329**

**STATE OF LOUISIANA**                                     **SECTION: "R"(3)**

## REPORT AND RECOMMENDATION

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts. Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing. See 28 U.S.C. § 2254(e)(2). Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

Petitioner, Quincy Demond Wilson, is a state prisoner incarcerated at the Dixon Correctional Institute in Jackson, Louisiana. On February 25, 2011, he was convicted of possession with intent to distribute cocaine.[1] On April 25, 2011, he was sentenced to a term of twenty years imprisonment, with the first two years of that sentence to be served without benefit of probation, parole, or suspension of sentence.[2] He then filed a motion for reconsideration of sentence.[3] On May 18, 2011, the state district court granted that motion and resentenced him to a

---

[1] State Rec., Vol. 2 of 4, trial transcript, p. 590; State Rec., Vol. 1 of 4, minute entry dated February 25, 2011; State Rec., Vol. 1 of 4, jury verdict form.
[2] State Rec., Vol. 1 of 4, transcript of April 25, 2011; State Rec., Vol. 1 of 4, minute entry dated April 25, 2011.
[3] State Rec., Vol. 1 of 4.

term of fifteen years imprisonment, with the first two years of that sentence to be served without benefit of probation, parole, or suspension of sentence.[4]

After unsuccessfully seeking post-conviction relief in the state courts, petitioner filed the instant federal application for habeas corpus relief.[5] The state filed a response conceding that the application was timely and that petitioner exhausted his remedies in the state courts; however, the state argued that the application should be dismissed on the merits.[6]

## Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal habeas corpus legislation, including 28 U.S.C. § 2254. Amended subsections 2254(d)(1) and (2) contain revised standards of review for pure questions of fact, pure questions of law, and mixed questions of both. The amendments "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." Bell v. Cone, 535 U.S. 685, 693 (2002).

As to pure questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); see also 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The

---

[4] State Rec., Vol. 1 of 4, transcript of May 18, 2011; State Rec., Vol. 1 of 4, minute entry dated May 18, 2011.
[5] Rec. Doc. 6.
[6] Rec. Doc. 13.

applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

As to pure questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision on the merits of such a claim unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).  Courts have held that the "'contrary to' and 'unreasonable application' clauses [of § 2254(d)(1)] have independent meaning." Bell, 535 U.S. at 694.

Regarding the "contrary to" clause, the United States Fifth Circuit Court of Appeals has explained:

> A state court decision is contrary to clearly established precedent if the state court applies a rule that contradicts the governing law set forth in the [United States] Supreme Court's cases.  A state-court decision will also be contrary to clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of the [United States] Supreme Court and nevertheless arrives at a result different from [United States] Supreme Court precedent.

Wooten v. Thaler, 598 F.3d 215, 218 (5th Cir. 2010) (internal quotation marks, ellipses, brackets, and footnotes omitted).

Regarding the "unreasonable application" clause, the United States Supreme Court has held:  "[A] state-court decision is an unreasonable application of our clearly established precedent if it correctly identifies the governing legal rule but applies that rule unreasonably to the facts of a particular prisoner's case."  White v. Woodall, 134 S. Ct. 1697, 1706 (2014).  However, the Supreme Court cautioned:

> Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably applies this Court's precedent; it does not require state courts to extend that precedent or license federal courts to treat the failure to do so as error. Thus, if a habeas court must extend a rationale before it can apply to the facts at

3

>hand, then by definition the rationale was not clearly established at the time of the state-court decision. AEDPA's carefully constructed framework would be undermined if habeas courts introduced rules not clearly established under the guise of extensions to existing law.

Id. (citations and quotation marks omitted). Therefore, when the Supreme Court's "cases give no clear answer to the question presented, let alone one in [the petitioner's] favor, it cannot be said that the state court unreasonably applied clearly established Federal law." Wright v. Van Patten, 552 U.S. 120, 126 (2008) (quotation marks and brackets omitted). The Supreme Court has also expressly cautioned that "an unreasonable application is different from an incorrect one." Bell, 535 U.S. at 694. Accordingly, a state court's merely incorrect application of Supreme Court precedent simply does not warrant habeas relief. Puckett v. Epps, 641 F.3d 657, 663 (5th Cir. 2011) ("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an incorrect application of the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable.").

While the AEDPA standards of review are strict and narrow, they are purposely so. As the United States Supreme Court has held:

>[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable.
>       If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther. Section 2254(d) reflects the view that habeas corpus is a guard against *extreme malfunctions* in the state criminal justice systems, *not a substitute for ordinary error correction through appeal. As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.*

Harrington v. Richter, 562 U.S. 86, 102-03 (2011) (citations omitted; emphasis added); see also Renico v. Lett, 559 U.S. 766, 779 (2010) ("AEDPA prevents defendants – and federal courts – from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts.").

The Supreme Court has expressly warned that although "some federal judges find [28 U.S.C. § 2254(d)] too confining," it is nevertheless clear that "all federal judges must obey" the law and apply the strictly deferential standards of review mandated therein. White v. Woodall, 134 S. Ct. 1697, 1701 (2014).

## Petitioner's Claim

Petitioner argues that his trial counsel was ineffective for failing to file a motion to suppress the evidence in this case on the ground that it was the fruit of an illegal seizure.[7] In the post-conviction proceedings, the state district court denied that claim on the merits, holding:

> Quincy Demond Wilson was charged with and convicted of possession with intent to distribute a schedule II controlled dangerous substance (crack cocaine). The state alleged that at approximately 9 o'clock p.m. on April 14, 2010, members

---

[7] As the state does in its response, the undersigned construes petitioner's application as asserting only this ineffective assistance claim. However, if the application should instead be construed as also asserting a claim on the alleged underlying violation on which the ineffective assistance claim is premised, i.e. a separate and distinct claim that petitioner is entitled to relief based on the purported illegality of the seizure under federal and/or state law, he cannot be granted relief on that basis for the following reasons.
  Any such *federal* claim would fall under the Fourth Amendment and so would be barred by Stone v. Powell, 428 U.S. 465 (1967). In Stone, the United States Supreme Court held that a habeas petitioner cannot be granted relief based on a Fourth Amendment claim if the state provides "an opportunity for full and fair litigation" of such claims. Id. at 494. Interpreting Stone, the United States Fifth Circuit Court of Appeals has clearly held:

> An "opportunity for full and fair litigation" means just that: an *opportunity*. If a state provides the processes whereby a defendant *can* obtain full and fair litigation of a fourth amendment claim, Stone v. Powell bars federal habeas corpus consideration of that claim *whether or not the defendant employs those processes*.

Caver v. Alabama, 577 F.2d 1188, 1192 (5th Cir. 1978) (emphasis added). Petitioner neither alleges nor demonstrates that Louisiana fails to provide such processes or routinely or systematically precludes litigation of such claims, and it is beyond cavil that Louisiana courts in fact provide criminal defendants an opportunity to raise Fourth Amendment claims. Bailey v. Cain, Civil Action No. 06-839, 2007 WL 1198911, at * 13 (E.D. La. Apr. 20, 2007).
  If petitioner is asserting such a claim based on a violation of *state* law, that claim simply is not cognizable in this Court. Federal habeas corpus relief may be granted only to remedy violations of the Constitution and laws of the United States; mere violations of state law will not suffice. 28 U.S.C. § 2254; Engle v. Isaac, 456 U.S. 107, 119 (1983).

of the Terrebonne Parish Sheriff's Department (Narcotics Task Force Division) arrested the defendant for possession of cocaine with the intent to distribute. That evening, narcotics agents dressed in tactical gear conducted patrols in an unmarked unit in the Jackson Ridge area. This was an area known to the officers for high incidences of drug trafficking. Agents observed two black males standing in the middle of Rosemarie Lane. The two black males fled when they observed the agents. Agents identified themselves as police and commanded them to stop, but the pair continued their flight. Agents observed one of the men, later identified as Quincy Wilson, throw something into the bushes. One agent recovered the item, a pill bottle containing 25 to 30 suspected crack cocaine rocks. Scientific analysis confirmed that the substance was crack cocaine. The defendant was ultimately detained, questioned, and arrested.

….

On May 7th, 2012, Mr. Wilson filed a *pro se* post conviction relief application ("PCR"). The Court appointed counsel to assist him at the evidentiary hearing. A fair reading of the defendant's pleadings reveals a single assignment of error: the alleged ineffective assistance of his appointed trial lawyer, Mr. Alexander Doyle. The state answered the [sic] Mr. Wilson's PCR application on June 15, 2012. After a series of continuances, the evidentiary hearing was held in this matter on July 16th, 2014. Mr. Wilson was present with his appointed PCR attorney, his trial attorney, and the prosecutor.

The court considered Mr. Wilson's PCR application, the completed trial record, the testimony and evidence adduced at the post conviction hearing, the arguments of counsel, and the law and DENIED his petition.

CLAIM 1: INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

Mr. Wilson's ineffective-assistance claim is uncomplicated. He argues that his trial counsel incompetently failed to file a timely motion to suppress evidence allegedly obtained in violation of the Fourth Amendment. His trial counsel, Mr. Alexander Doyle, was tapped by the indigent defender's office to represent Mr. Wilson. It is undisputed that no motion to suppress the drug evidence suppress [sic] was filed.

The state countered that post conviction relief was not warranted because a suppression motion would have been a futile, *pro forma* gesture because the state had reasonable grounds to stop and detain Mr. Wilson for questioning; because he had not yet been physically apprehended and had not submitted to their authority when he threw the drugs into the shrubbery; and because he had no reasonable expectation of privacy in this abandoned property.

The right to counsel is a fundamental right of criminal defendants; it assures the fairness and legitimacy of the adversarial process. See, e.g., Gideon v. Wainwright, 372 U.S. 335, 344 (1963). The essence of an ineffective-assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect. See, e.g., Strickland v. Washington, 466 U.S. 668, 686 (1984). See also State v. Washington, 85-2339 (La. 7/18/86) (adopting Strickland). To

prevail, the defendant must show both that counsel's representation fell below an objective standard of reasonableness, Strickland, 486 U.S. at 688, and that there exists a reasonable probability that the result of the proceeding would have been different but for counsel's unprofessional errors. Id. at 694. The reasonableness of counsel's performance must be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances. Id. at 689. When an ineffective-assistance claim is ground [sic] on a failure to file a motion to suppress, the defendant must also demonstrate that his Fourth Amendment claim is meritorious. Kimmelman v. Morrison, 477 U.S. 365 (1986).

Petitioner's trial lawyer, Alexander Doyle, is a well-seasoned criminal trial practitioner with more than 30 years' experience. His competence is presumed. Strickland, 466 U.S. at 689. His normal course of action is to discuss pretrial and trial strategy with each criminal client. He acknowledged at the PCR evidentiary hearing that a motion to suppress is typically filed in drug cases because the drug evidence is generally crucial to a conviction. Mr. Doyle did not recall having been either directed or requested by Mr. Wilson to file a motion to suppress. However, he thoroughly researched the admissibility issue and, in his professional opinion, there was [sic] legitimate basis for motion to suppress the drug evidence in this case.

The exclusionary rule bars, as illegal fruit, physical and verbal evidence obtained either during or as a direct result of an unlawful invasion. Wong Sun v. U.S., 371 U.S. 471 (1963). However, if an individual abandons or otherwise disposes of property before any unlawful intrusion, the property may be lawfully seized and used in the resulting prosecution. State v. Belton, 441 So.2d 1195, 1199 (La. 1983), cert. den. Belton v. Louisiana, 466 U.S. 953 (1984).

The crucial question, in this case, is whether defendant was unlawfully seized prior to discarding the contraband. A person is not "seized" within the meaning of the Fourth Amendment until that person either submits to a police show of authority or is physically contacted by the police. California v. Hodari D., 499 U.S. 621, 625 (1991). Louisiana has adopted the Hodari D. definition of an "actual stop" [sic] requires further inquiry because the Louisiana Constitution affords greater protection than does the federal constitution. State v. Tucker, 626 So.2d 707, 712 (La. 1993). A "seizure" also occurs when an "actual stop" of the individual is "imminent." Id. An actual stop is imminent "only when the police come upon an individual with such force that, regardless of the individual's attempts to flee or elude the encounter, an actual stop of the individual is virtually certain." Id. at 712. The factors to consider in determining whether an actual stop is imminent are the proximity of the police in relation to the defendant at the outset of the encounter, whether the person has been surrounded by the police, whether the police approached the individual with their weapons drawn, whether the police and/or the individual are on foot or in motorized vehicles during the encounter, the location and characteristics of the area where the encounter takes place, and the number of police officers involved in the encounter. Id. at 712-713.

In State v. Burns, 04-175 (La.App. 5 Cir. 6/29/04), 877 So.2d 1073, a police officer was on patrol at night in a high crime area when he observed the defendant standing in the middle of the street. When the defendant noticed the unmarked unit

as a "police presence," he made eye contact with the officer, and started to walk away toward the residence while looking back at the officers. When the officer exited the vehicle, the defendant began to run toward the residence. The defendant discarded the contraband before the officer made physical contact with him. The court found that there was no unlawful intrusion and any property abandoned by the defendant was lawfully seized.

In State v. Jackson, the court held that recovered cocaine was legally seized after the defendant discarded his cocaine packet, even after police officers positioned themselves to stop him, approached the defendant, and identified themselves as police officers, because he discarded the cocaine before the officers acted to effectuate their subjective intent to stop him. 00-3083, p. 4 (La. 3/15/02), 824 So.2d 1124, 1126-27. The court stated, "by merely identifying themselves as the police, before they asked respondent any questions, drew their weapons, or otherwise asserted their official authority over him, the officers had not yet 'seized' the respondent." Id. at 1126. In State v. Johnson, the court held no stop or seizure occurred and evidence was legally seized where officers parked their police car four to five feet from the defendant, at which time defendant threw down a bag later determined to be heroin. 01-2436, (La. 1/25/02), 806 So.2d 647. The court in Johnson stated the officers "had not yet indicated by word or action that an actual stop, *i.e.*, a forcible detention, or seizure of the person was about to take place." Id. at 648. Also, in State v. Britton, 633 So.2d 1208, 1209 (La. 1994), the court held the seizure of cocaine constitutional, after police followed the defendant into a gas station and were no more than one or two feet from defendant when he discarded the cocaine on a store shelf, reasoning that the officers "did not forcibly detain him, or make a show of their authority signalling [sic] that some form of official detention was imminent, until after he discarded the packet of cocaine."

In State v. Ganier, 591 So.2d 1328 (La. App. 4th Cir. 1991), an officer witnessed an unknown male walking from a driveway in the Florida Housing Project toward his marked police vehicle. Upon seeing the police car, the subject turned and began to run away. The officer chased the subject and saw him throw down an object which was later found to be crack cocaine. The court found that the subject was not seized when he abandoned the cocaine and the officers were justified in retrieving it.

In the present case, Mr. Wilson was not actually stopped at the time he abandoned the drug evidence. The area in question was a known drug trafficking area. Narcotics agents responded reasonably to Mr. Wilson's furtive action and flight at their approach. They had reasonable cause to detain and question him. Officers had no physical contact with him before he discarded the crack cocaine. Moreover, an actual stop was not imminent. Nothing in the trial record indicates that the agents came upon Mr. Wilson with such force that regardless of his attempts to flee, an actual stop was virtually certain. Therefore, because he discarded the cocaine prior to any unlawful intrusion, the seized drugs could be used against him in a resulting prosecution. A suppression motion would have indeed been futile.

Petitioner did not satisfy the rigorous Strickland standard. Post-conviction [sic] is not warranted. The defendant did not demonstrate that he would have

prevailed on a motion to suppress and thus cannot demonstrate that he was prejudiced by his counsel's failure to file such a motion.[8]

The Louisiana First Circuit Court of Appeal then likewise denied relief, stating simply:

"**WRIT DENIED.**  See State v. Dobard, 2001-2629 (La. 6/21/02), 824 So.2d 1127, 1129-30."[9]

---

[8] State Rec., Vol. 3 of 4, Reasons for Judgment Denying Post-Conviction Relief dated July 31, 2014 (footnote omitted).

[9] State v. Wilson, No. 2014 KW 1179 (La. App. 1st Cir. Oct. 21, 2014); State Rec., Vol. 3 of 4. In Dobard, the Louisiana Supreme Court had explained:

> The Fourth Amendment of the United States Constitution and Article 1, Section 5 of the Louisiana Constitution protect persons from unreasonable searches and seizures. The police may not, therefore, make a warrantless arrest of a citizen without probable cause that the citizen has engaged in criminal conduct. State v. Tucker, 626 So.2d 707, 710 (La. 1993). Additionally, while the police may briefly detain and interrogate an individual in a public place, they may make such an investigatory stop only if it is based upon reasonable, articulable suspicion that the individual has engaged in, is engaging in, or is about to engage in criminal activity. La.C.Cr.P. art. 215.1; Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); Tucker, 626 So.2d at 710; State v. Andrishok, 434 So.2d 389, 391 (La. 1983); State v. Chopin, 372 So.2d 1222, 1224 (La. 1979).
>
> These constitutional protections, however, do not proscribe all interaction between the police and other individuals. Police officers "have the right to engage anyone in conversation, even without reasonable grounds to believe that they have committed a crime." State v. Johnson, 01-2436, p. 3 (La. 1/25/02), 806 So.2d 647, 648 (quoting State v. Duplessis, 391 So.2d 1116, 1117 (La. 1980)). The police do not need probable cause to arrest or reasonable cause to detain an individual each time they approach a citizen. State v. Belton, 441 So.2d 1195, 1199 (La. 1983). As long as the person approached by a law enforcement officer remains free to disregard the encounter and walk away, the foregoing constitutional provisions are not implicated. Tucker, 626 So.2d at 710; Belton, 441 So.2d at 1199.
>
> In order to discourage police misconduct, evidence recovered as a result of an unconstitutional search or seizure is inadmissible. Consequently, property abandoned by an individual and recovered by the police as a direct result of an unconstitutional seizure may not be used in a subsequent prosecution. Tucker, 626 So.2d at 710. If, however, property is abandoned prior to any unlawful intrusion into a citizen's right to be free from governmental interference, then the property may be lawfully seized and used in a resulting prosecution. Id. In this latter situation, the citizen has no reasonable expectation of privacy and there is no violation of his custodial rights. Id. Because these rules of inadmissibility are intended to protect individuals from unwarranted, forcible governmental interference, "it is only when the citizen is *actually stopped* without reasonable cause or when a stop without reasonable cause is *imminent* that the 'right to be left alone' is violated, thereby rendering unlawful any resultant seizure of abandoned property." Id. at 710-11 (quoting Belton, 441 So.2d at 1199) (emphasis in original).
>
> In Tucker, this court, adopting the U.S. Supreme Court's pronouncement in California v. Hodari D., 499 U.S. 621, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991), held that an individual has been "actually stopped," *i.e.,* seized, for purposes of La. Const. art. 1, § 5 when he submits to a police show of authority or when he is physically contacted by the police. Additionally, this court determined that even when an actual stop has not been effectuated, our constitution still mandates a finding that an individual has been seized if an actual stop is "imminent." An actual stop is imminent "only when the police come upon an individual with such force that, regardless of the individual's attempts to flee or elude the encounter, an actual stop of the individual is *virtually certain.*" Tucker, 626 So.2d at 712 (emphasis in original).

Dobard, 824 So.2d at 1129-30.

9

The Louisiana Supreme Court thereafter denied petitioner's related writ application without assigning reasons.[10]

Because petitioner's ineffective assistance claim was adjudicated by the state courts on the merits, and because such a claim presents a mixed question of law and fact, this Court must defer to the state court decision rejecting the claim unless that decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1); Moore v. Cockrell, 313 F.3d 880, 881 (5th Cir. 2002).  Moreover, the United States Supreme Court has explained that, under the AEDPA, federal habeas corpus review of ineffective assistance of counsel claims is in fact doubly deferential:

> The pivotal question is whether the state court's application of the Strickland standard was unreasonable.  This is different from asking whether defense counsel's performance fell below Strickland's standard.  Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a Strickland claim on direct review of a criminal conviction in a United States district court.  Under AEDPA, though, it is a necessary premise that the two questions are different.  For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law.  A state court must be granted a deference and latitude that are not in operation when the case involves review under the Strickland standard itself.
> A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision.  Yarborough v. Alvarado, 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004).  And as this Court has explained, "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity.  The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations."  Ibid.  "[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court."  Knowles v. Mirzayance, 556 U.S. ____, ____, 129 S.Ct. 1411, 1413-14, 173 L.Ed.2d 251 (2009) (internal quotation marks omitted).

---

[10] State ex rel. Wilson v. State, 178 So.3d 158 (La. 2015); State Rec., Vol. 3 of 4.

Harrington v. Richter, 562 U.S. 86, 101 (2011) (citation omitted). The Supreme Court then explained:

> Surmounting Strickland's high bar is never an easy task. An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the Strickland standard must be applied with scrupulous care, lest intrusive post-trial inquiry threaten the integrity of the very adversary process the right to counsel is meant to serve. Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is all too tempting to second-guess counsel's assistance after conviction or adverse sentence. The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom.
>
> Establishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult. *The standards created by Strickland and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so.* The Strickland standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d). *When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.*

Id. at 105 (citations omitted; emphasis added). For the following reasons, the Court finds that, under those stringently deferential standards, it simply cannot be said that relief is warranted with respect to petitioner's ineffective assistance of counsel claim.

As the state court correctly noted, the United States Supreme Court established a two-prong test for evaluating claims of ineffective assistance of counsel. A petitioner seeking relief must demonstrate that counsel's performance was deficient *and* that the deficient performance prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 697 (1984). A petitioner bears the burden of proof on such a claim and "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective." Jernigan v. Collins, 980 F.2d 292, 296 (5th Cir. 1993); see also Clark v. Johnson, 227 F.3d 273, 284 (5th Cir. 2000). If a court finds that a petitioner has made an

insufficient showing as to either of the two prongs of inquiry, i.e. deficient performance or actual prejudice, it may dispose of the ineffective assistance claim without addressing the other prong. Strickland, 466 U.S. at 697.

To prevail on the deficiency prong of the Strickland test, a petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment. See Styron v. Johnson, 262 F.3d 438, 450 (5th Cir. 2001). "Counsel's performance is deficient if it falls below an objective standard of reasonableness." Little v. Johnson, 162 F.3d 855, 860 (5th Cir. 1998). Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstances. See Strickland, 466 U.S. at 689. "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'" Lockhart v. Fretwell, 506 U.S. 364, 371 (1993) (quoting Strickland, 466 U.S. at 690). A petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation. See Crockett v. McCotter, 796 F.2d 787, 791 (5th Cir. 1986); Mattheson v. King, 751 F.2d 1432, 1441 (5th Cir. 1985).

In order to prove prejudice with respect to trial counsel, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. In this context, a reasonable probability is "a probability sufficient to undermine confidence in the outcome." Id. In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial." Crockett, 796 F.2d at 793.

Out of an abundance of caution, the undersigned expressly notes that petitioner's claim is *not* barred by Stone v. Powell, 428 U.S. 465 (1967). Although, as previously noted, a petitioner

may not bring a federal habeas claim arguing that he was subjected to an illegal search and seizure under *Fourth* Amendment, he is not precluded from asserting a related *Sixth* Amendment claim that his counsel was ineffective for failing to file a motion to suppress the evidence in question. Kimmelman v. Morrison, 477 U.S. 365 (1986). In Kimmelman, the Supreme Court reasoned that although the two types of claims are interrelated, they are nevertheless distinct. The Supreme Court further observed:

> Strickland's standard, although by no means insurmountable, is highly demanding. More importantly, it differs significantly from the elements of proof applicable to a straightforward Fourth Amendment claim. Although a meritorious Fourth Amendment issue is necessary to the success of a Sixth Amendment claim like respondent's, a good Fourth Amendment claim alone will not earn a prisoner federal habeas relief. Only those habeas petitioners who can prove under Strickland that they have been denied a fair trial by the gross incompetence of their attorneys will be granted the writ and will be entitled to retrial without the challenged evidence.

Id. at 382.

Accordingly, if the evidence in question was not obtained through an illegal seizure, then a petitioner's related Sixth Amendment claim based on his counsel's failure to file a motion to suppress challenging the evidence on that basis necessarily fails. See id. at. 375 ("Where defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice."). That is the case here, because, at the time petitioner discarded the evidence in question, he had not in fact been "seized" under either federal or state law.

Under federal law, a person is not considered "seized" until he yields to an officer's efforts to apprehend him. California v. Hodari D., 499 U.S. 621, 626 (1991) ("The narrow question before

us is whether, with respect to a show of authority as with respect to application of physical force, a seizure occurs even though the subject does not yield. We hold that it does not."). Therefore, the evidence at issue in this case clearly was not excludable as the fruit of an illegal seizure under federal law, because the evidence was discarded by petitioner before he yielded to the officers' authority.[11]  Hodari D., 499 U.S. at 629 ("[A]ssuming that [the officer's] pursuit in the present case constituted a 'show of authority' enjoining Hodari to halt, since Hodari did not comply with that injunction he was not seized until he was tackled. The cocaine abandoned while he was running was in this case not the fruit of a seizure, and his motion to exclude evidence of it was properly denied.").

Of course, it is true that Louisiana's state constitutional protections against illegal seizure is broader than those afforded by the federal constitution. State v. Tucker, 626 So.2d 707, 711-12 (La. 1993). However, even under Louisiana law, a person is not considered "seized" until, at the latest, the point at which an actual stop is "virtually certain." As the Louisiana Supreme Court has explained:

> [W]e have previously held that a seizure violative of La. Const. Art. 1, Sect. 5 occurs when the police, without reasonable suspicion, either actually stop an individual *or create a situation wherein an actual stop of the individual is imminent*. Today we adopt Hodari D.'s definition for determining when an 'actual stop' has occurred. *We additionally adopt a standard for determining the 'imminency' of an actual stop which focuses on whether an 'actual stop' is 'virtually certain' to result from the police encounter.*"

Id. at 713 (emphasis added).

In the instant case, when the officers encountered the suspects, it was nighttime,[12] the suspects were several feet away from the officers,[13] and the suspects began moving in different

---

[11] See, e.g., State Rec., Vol. 2 of 4, trial transcript, p. 333.
[12] State Rec., Vol. 2 of 4, trial transcript, p. 351.
[13] Id. at p. 336.

directions after they became aware of the officers.[14]  Petitioner walked away "at a fast pace"[15] for approximately forty or fifty feet,[16] discarding the cocaine during this effort to avoid the officers.[17] Therefore, at the time he discarded the evidence, it was not *at all* certain, much less "virtually certain," that the officers would be successful in stopping him.  Accordingly, even under the more generous provisions of Louisiana law, the evidence was not excludable.  See, e.g., Tucker, 626 So.2d at 713.

For these reasons, any motion to suppress the evidence as the fruit of an illegal seizure, whether brought under federal or state law, would have been meritless.  Therefore, necessarily, counsel was not ineffective for failing to file such a meritless motion.  See, e.g., Benitez v. Stephens, Civ. Action No. 3:13-CV-1483, 2013 WL 6869406, at *9 (N.D. Tex. Dec. 31, 2013); United States v. Allen, Crim. Action No. 07-161, 2010 WL 1403959, at *6 (E.D. La. Mar. 30, 2010), aff'd, 436 Fed. App'x 329 (5th Cir. 2011).

In summary, it is clear that petitioner has not demonstrated that the state court decision rejecting his ineffective assistance of counsel claim was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.  Accordingly, utilizing the AEDPA's doubly deferential standards of review applicable to such claims, this Court should likewise deny relief.

## **RECOMMENDATION**

It is therefore **RECOMMENDED** that the federal application for habeas corpus relief filed by Quincy Demond Wilson be **DISMISSED WITH PREJUDICE**.

---

[14] Id. at 347.
[15] Id.
[16] Id. at 369.
[17] Id. at 333.

15

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[18]

New Orleans, Louisiana, this tenth day of February, 2016.

                                        *Daniel E. Knowles, III*

**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**

---

[18] Douglass referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.